IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

CHASE WEBB BURSON,

        Petitioner,

v.                                                    No. CIV 09-985 JH/RHS
                                                       No. CR   06-252 JH

UNITED STATES OF AMERICA,

        Respondent.

**MEMORANDUM OPINION AND ORDER**
**SETTING CONFERENCE TO SET EVIDENTIARY HEARING**

**Introduction**

THIS MATTER is before the Court on Petitioner Chase Webb Burson's ("Burson") Motion to Vacate Sentence brought under 28 U.S.C. § 2255. [Doc. 1]. On December 3, 2009, Respondent filed its response [Doc. 8], and on January 15, 2010, Burson filed a reply [Doc. 11.] Burson is represented by counsel, and is currently incarcerated at FCI Fort Worth, Texas. [Doc. 1, Ex. G, ¶ 2.]

Burson claims that retained trial attorney, Cliff McIntyre ("McIntyre or "Attorney McIntyre"), provided ineffective assistance of counsel in advising Burson about the merits of his motions to suppress, and the consequences of rejecting the government's plea offer and proceeding to trial. [Doc. 1, pp. 1-2.] Burson asserts that he rejected the government's offer to plead guilty to the original indictment, in reliance of counsel's "incompetent advice."

The plea offer would have exposed Burson to a ten-year mandatory minimum sentence (five years for methamphetamine possession with a consecutive five-year sentence for gun possession). Burson proceeded to trial and was convicted on all counts. Burson was subjected to a mandatory

1

minimum sentence of ten years, with a mandatory consecutive five-year sentence for carrying a handgun during and in relation to a drug trafficking crime. Thus, Burson was sentenced to a mandatory minimum period of 15-years incarceration. [Doc. 1, p. 2.]

Burson asks the Court to vacate the judgment and sentence entered against him and to order the government to reinstate the plea offer, and give Burson the opportunity to accept the plea offer. [Doc. 1, p. 3.]

The government argues that "based on the record and the applicable clear standard of reasonableness," McIntyre competently and vigorously defended Burson. [Doc. 8, p. 1.] In support of its argument, the government attached an affidavit of McIntyre, in which counsel stated he explained to Burson the "pros and cons" of accepting the government's plea offer and the probable consequences of rejecting the plea offer. Attorney McIntyre explained that Burson's father, who was present at all consultations between counsel and Burson, did not want his son to serve a ten-year sentence and would not allow Burson to accept the plea offer. [Doc. 8, Ex. 1.]

The government argues that the § 2255 motion must fail because Burson cannot demonstrate constitutionally deficient representation of trial counsel. [Doc. 8.]

## Underlying Criminal Conviction

The following factual background is taken from the Tenth Circuit Court of Appeal's denial of Burson's direct appeal, United States v. Burson, 531 F.3d 1254 (10th Cir. 2008), the federal habeas pleadings, and the federal criminal case docket, No. CR 06-252 JH ("CR Doc. __").

At about 2 a.m. on March 8, 2005, Police Officer Keith McPheeters noticed an expired license plate on a car parked at a convenience store in his patrol zone in Farmington, New Mexico. McPheeters ran a check on the license plate and learned the car's owner had an outstanding arrest warrant. McPheeters then noticed Burson exit the convenience store and get into the car, at which

point McPheeters approached Burson in the car and asked for identification. Through the car's open window, McPheeters spotted a plastic baggie on the driver's side floorboard that appeared to contain methamphetamine. McPheeters ordered Burson out of the car, advised him of his Miranda rights, and asked him if he had questions about his rights. Burson stated he understood his rights. In response to McPheeters' question about whether the baggie contained methamphetamine, Burson responded affirmatively. McPheeters arrested Burson for possession.

After arresting him, McPheeters began an inventory search of the car. He spotted a handgun directly underneath the driver's seat and another plastic baggie that appeared to contain cocaine located in a gap in the car's center console. Burson acknowledged the bag contained cocaine. Behind the bag with cocaine, McPheeters found a larger bag of methamphetamine.

At about 3:45 a.m., after being booked into the police station, Burson asked to speak to McPheeters. In response to McPheeters' question about his Miranda rights, Burson stated he remembered his Miranda rights. Burson wished to discuss his case with McPheeters. During a 19 or 20-minute interview, Burson made further incriminating statements about the gun and drugs McPheeters found in the car. McPheeters understood that Burson was probably at least partially under the influence of methamphetamine during the interview but concluded that Burson was not confused or incoherent, and that he responded appropriately to his questions. Burson, 531 F.3d at 1255-56. When asked about his criminal history at the police station, Burson admitted he had a pending drug charge against him. Id. at 1260.

Initially, the district attorney's office in the Eleventh Judicial District for the State of New Mexico brought charges against Burson because "that office had prosecuted the defendant for similar offenses in the past." [Doc. 8, p. 3.] Burson was represented by a different attorney during the state proceedings. The state district attorney's office made a plea offer, that required Burson to

3

plead guilty to the offenses and exposed him to a maximum prison term of three years. Burson rejected the state's plea offer. [Doc. 8, Exhibits 1-3.]

Burson argues that the government offered no support for the contention that the state district attorney agreed Burson's sentence would be a 3-year term of incarceration. [Doc. 11, p. 6.] Burson further asserts that the sentencing exposure under the state's offer might have been as much as a 7-year sentence. [Doc. 11, p. 7.]

On January 20, 2006, the United States filed a criminal complaint against Burson with possession with intent to distribute 113.4 grams of methamphetamine and 26.3 grams of cocaine and possession of a firearm during the commission of a controlled substance violation, contrary to 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 924(c)(1)(A). [CR Doc. 1.] Burson was 23 years old then. He retained Attorney McIntyre to represent him on the federal charges. [CR Doc. 5.]

On February 7, 2006, Burson was indicted. [CR Doc. 7.] He was charged with: (1) possessing with intent to distribute 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine; (2) possessing with intent to distribute a quantity of a mixture or substance containing a detectable amount of cocaine; and (3) knowingly carrying a firearm during and in relation to a drug trafficking offense. The government dropped an additional charge of possession with intent to distribute methamphetamine from an earlier arrest. [CR Doc. 7.] If convicted of all charges, Burson faced a mandatory minimum 5-year sentence for the drug charges with a consecutive 5-year sentence for the gun charge. [Doc. 1, p. 7.]

The government explained that after the indictment was issued, a DEA analysis was completed, indicating the purity of the methamphetamine. Because of the drug's purity, the government planned to issue a superseding indictment that would provide for a 10-year mandatory minimum term of imprisonment, plus 5 years for the gun charge. [Doc. 8, p. 3.] Before issuing a

4

superseding indictment, the government communicated a plea offer to McIntyre on behalf of Burson. [Doc. 1, Ex. D, Doc. 8, p. 3.] The government's plea letter stated that the United States also would file a Section 851 enhancement on the "A" level charge should the case proceed to trial which would raise the mandatory minimum to 20 years for the drugs alone. [Doc. 1, Ex. D.] If Burson accepted the offer, he would receive a 3-level reduction for acceptance of responsibility. [Doc. 1, Ex. D.] After consultation with counsel, Burson rejected the offer.

Before trial, Burson moved to suppress all incriminating statements made to McPheeters, arguing that he did not knowingly or intelligently waive his Miranda rights because he was exhausted and under the influence of drugs. The district court denied the motion, and the Tenth Circuit affirmed. Burson, 531 F. 3d 1254.

Burson also filed a motion to suppress the physical evidence seized from the car he was driving. [CR Doc. 42.] The motion alleged that Officer McPheeters subjected Burson to an illegal Terry stop, such that the plain view doctrine did not apply; even if it did apply, the plastic bag with the crystalline substance was not immediately apparent; and there were no exigent circumstances justifying Officer McPheeters' warrantless search of the car after Burson's arrest. The district court rejected these arguments and denied the motion to suppress. [Doc. 1, *see* pp. 10-11 for summary of criminal proceeding.]

After the Court denied the motion to suppress, Burson alleges he attempted to fire McIntyre but that McIntyre told Burson and his parents that it was likely too late to replace counsel but that he (McIntyre) would speak to the Court. Later that same day, McIntyre informed the Bursons he had spoken to Judge Herrera, who told him she would not permit withdrawal of counsel so close to trial. [Doc. 1, Exhibits.]

The Court conducted a bench trial after the suppression hearing. The government called Officer McPheeters, an ATF agent to testify about the gun, a DEA agent to testify about the handling of drug evidence, and a senior forensic chemist from the DEA, who testified about the weight and purity of the drugs seized in March 2005. [Doc. 1, p. 12.] The defense called one witness, a chemist, who provided testimony about determining the purity level of a sample of methamphetamine. Defendant's expert chemist estimated the methamphetamine would have had an actual lower weight than the weight identified by the government's expert. [Doc. 1, p. 13.]

At the close of evidence, the Court found Burson guilty of all charges. It further found in favor of the government on the issue of the purity and actual weight of the drugs. [Doc. 1, p. 13.] After trial, Burson retained new counsel to represent him at sentencing and in post-trial proceedings. On August 15, 2007, the Court entered an amended judgment sentencing Burson to the mandatory minimum sentence of 15 years in prison. [CR Doc. 86.]

### Alleged Ineffective Assistance of Counsel Claim

Burson's § 2255 motion alleges ineffective assistance of counsel by Attorney McIntyre with respect to the plea offer or rejection of the plea offer. Burson claims that he would have accepted the government's plea offer but for McIntyre's ineffective assistance during the plea process. Had Burson accepted the government's offer, the applicable mandatory minimum sentence would have been ten years, five years less than the mandatory minimum sentence he received. Thus, according to Burson, there was constitutionally defective performance by McIntyre that prejudiced him.

**A.    Legal Standard–Ineffective Assistance of Counsel**

Criminal defendants are "entitled to 'effective assistance of competent counsel'" before deciding whether to plead guilty. Padilla v. Kentucky, – U.S. –, 130 S.Ct. 1473, 1480-81 (2010) (internal quotation omitted). "The plea bargaining process is a critical stage of a criminal

prosecution." Williams v. Jones, 571 F.3d 1086, 1090-91 (10th Cir. 2009) (internal citations omitted), *cert. denied*, 130 S.Ct. 3385 (2010). "Accordingly, the Sixth Amendment applies to representation during the plea process." Id. at 1091 (internal citations omitted). *See* Hill v. Lockhart, 474 U.S. 52, 58-59 (1985) (applying "the two-part Strickland v. Washington test applies to challenges to guilty pleas based on ineffective assistance of counsel").[1]

Under Strickland, 466 U.S. 668, 700 (1984), a petitioner must establish that (1) his trial counsel's performance was deficient and (2) the deficient performance prejudiced his defense. With regard to plea agreements, counsel has a "critical obligation . . . to advise the client of 'the advantages and disadvantages of a plea agreement." Padilla, 130 S.Ct. at 1484 (internal citation omitted). To prove deficient performance under Strickland, Burson must overcome the "strong presumption" that counsel's conduct was constitutionally effective. Duvall v. Reynolds, 139 F.3d 768, 777 (10th Cir.), *cert. denied*, 525 U.S. 933 (1998). In addition, scrutiny of counsel's performance must be highly deferential and must avoid the distorting effects of hindsight. Miles v. Dorsey, 61 F.3d 1459, 1474 (10th Cir. 1995), *cert. denied*, 516 U.S. 1062 (1996).

"The failure to properly advise a defendant of available options, and possible consequences relevant to plea negotiations can constitute ineffective assistance of counsel." United States v. Wilson, __ F. Supp. 2d ___, 2010 WL 811508, * (D. Or. Mar. 1, 2010) (internal citation omitted). In assessing trial counsel's performance during plea negotiations, courts sometimes examine the attorney's evaluation of the discovery materials, his or her evaluation of the strength of the government's case, and the attorney's experience as a criminal defense attorney. *See, e.g.,* United

---

[1] This case presents the converse of Hill, that is, Burson contends that but for counsel's erroneous advice, he would have accepted the plea offer and foregone a trial. The Tenth Circuit and other circuits have accepted such claims as legitimate ineffective assistance of counsel claims. Williams v. Jones, 583 F.3d 1254, 1255 (10th Cir. 2009), *cert. denied*, 130 S.Ct. 3385 92010) (*citing, e.g.,* United States v. Carter, 130 F.3d 1432, 1442 (10th Cir. 1997), *cert. denied*, 523 U.S. 1144 (1998)).

States v. Riccardi, 314 F. App'x 99, 101 (10th Cir. Sep. 12, 2008) (unpublished) (counsel satisfied the objective standard of reasonableness "in case at bar" if he communicates his "informed opinion as to what pleas should be entered") (internal citation omitted), *cert. denied*, 129 S.Ct. 2072 (2009); Parsley v. United States, 604 F.3d 667, 672 (1st Cir. 2010) (concluding trial counsel made a reasonable strategic choice in counseling client during plea negotiations). "A reasonably competent attorney will attempt to learn all of the facts of the case, make an estimate of the likely sentence, and communicate the result of that analysis before allowing the client to plead guilty." Bethel v. United States, 458 F.3d 711, 717 (7th Cir. 2006), *cert. denied*, 127 S.Ct. 1027 (2007). *See* United States v. Martinez, 359 F. App'x 949, 950-51, 2010 WL 65193 (10th Cir. Jan. 11, 2010 (unpublished) (trial counsel advised defendant that he could face a thirty-year sentence if convicted at trial, but defendant insisted on a plea offer that included no prison time).

The "prejudice" prong of the two-part test requires that the petitioner demonstrate the existence of "a reasonable probability, that but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.

In the context of the plea bargaining stage, the prejudice inquiry "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." Hill, 474 U.S. at 58. The Tenth Circuit, in Carter, 130 F.3d at 1442, stated that it required a demonstration that "but for the incompetent counsel a defendant would have accepted the plea offer and pleaded guilty." (internal citation omitted.)

Moreover, the general rule is that a defendant who rejects a plea offer due to improper advice from counsel may show prejudice under Strickland even though he subsequently received a fair trial. Williams, 571 F.3d at 1091-92 (fact that petitioner received a fair trial, that resulted in a much

8

greater sentence than that offered during a rejected plea offer, did not vitiate the prejudice from constitutionally defective performance of counsel). Counsel can be ineffective where his mistakes harmed the defense. Id. at 1092 (*citing* United States v. Gonzalez-Lopez, 548 U.S. 140, 147 (2006)). "Surely, the plea process is part of the defense." Id. at 1092. "[E]ffective assistance [of counsel] is guaranteed for the whole plea process, not just in connection with accepting (but not rejecting) a plea agreement." Id. *See also* Wanatee v. Ault, 259 F.3d 700, 703 (8th Cir. 2001) (internal citation omitted) (large body of federal case law holds a defendant who rejects a plea offer due to improper advice from counsel may show prejudice under Strickland, even if he ultimately received a fair trial). "To establish prejudice [in the plea negotiation context], the petitioner must show that he would have accepted the plea but for counsel's advice, and that had he done so he would have received a lesser sentence." Id. at 703-04 (internal citation omitted). *See also* Williams, 571 F.3d at 1090 (collecting cases that address the elements of ineffective assistance of counsel in the plea bargaining process, including the required showing that but for counsel's deficient performance, the defendant would have accepted the plea offer and pled guilty).

**B.     Summary of Pleadings**

Burson argues that McIntrye's performance was deficient in advising him about the possible merits of the motions to suppress and telling Burson there was a good chance the Court would suppress at least some of the evidence. Burson attacks McIntyre's supposed predictions as being based on "ignorance of the record and a misapprehension of the relevant law." [Doc. 1, p. 1.]

Secondly, Burson claims that McIntyre erroneously advised him that if the government failed to prove the quantity of methamphetamine alleged in a superseding indictment, Burson would be acquitted of possessing with intent to distribute methamphetamine and carrying a firearm during the commission of that offense. Burson argues this was not accurate information because he would face

9

a ten-year sentence even under a best case scenario, *i.e,* even if the government was unable to prove he possessed 50 or more grams of methamphetamine. While the plea exposed Burson to a ten-year sentence, proceeding to trial resulted in a fifteen-year sentence.

Because of McIntyre's allegedly incompetent advice, Burson rejected the plea offer and proceeded to trial. Had McIntyre properly advised Burson about the weakness of the motions to suppress and that he could be convicted of possession with intent to distribute even if the Court found the government failed to prove the actual weight of the methamphetamine was 50 grams or more, Burson claims he would have accepted the plea offer. [Doc. 1, p. 14.] If he had accepted the plea offer, he "likely would have received a sentence five years less than what he received after trial." [Doc. 1, pp. 2, 9.]

In support of his position, Burson attaches his own affidavit, along with affidavits from his parents. [Doc. 1, Exhibits G, H, I.] Burson states in his affidavit that in the Spring of 2006, the Assistant United States Attorney ("AUSA") informed McIntyre that the government intended to supersede the indictment to include more serious charges. McIntyre told Burson that if he pled guilty to all counts on the original indictment, the government would not file the superseding indictment. Burson stated he spoke to McIntyre about this offer and that McIntyre "gave [Burson] the impression that if I accepted that plea offer, my mandatory minimum sentence would be ten years in prison and that I likely would be sentenced to ten years in prison." [Chase Burson Aff., at ¶ 7.]

Burson also contends that McIntyre informed him it was unlikely that the AUSA would follow through with her threat to file a superseding indictment and that the AUSA was simply trying to scare Burson into pleading guilty because federal prosecutors tended to do that. [Id., ¶ 8.] Burson further explained that McIntyre told Burson that if the AUSA followed through on her threat to file

a superseding indictment, Burson would face a mandatory minimum sentence of 15 years if he lost at trial. [Id., at ¶ 9.] The superseding indictment was filed.

Burson claims that McIntrye told him that he had a "good shot" of getting a better outcome at trial than the ten-year sentence he predicted Burson would receive as a result of the plea offer. According to Burson, McIntyre also stated the AUSA might make Burson a better plea offer later in the case. In addition, McIntyre advised Burson that he had a strong motion to suppress the drugs and gun found in the car and the statements Burson made to the police later. If the Court suppressed the evidence and statements, McIntyre told Burson all charges would be dropped. [Id., at ¶¶ 10-12.]

McIntyre allegedly informed Burson that if he proceeded to trial, he had a good chance of winning on the charges of possessing methamphetamine and possessing a firearm. McIntyre did not believe the government could prove Burson had 50 grams or more of actual methamphetamine as charged in the indictment because the government's expert could not say how pure the methamphetamine was. [Id., at ¶ 13.] According to Burson, if the government so failed, McIntyre told Burson he could not be convicted of anything regarding the methamphetamine and that because the firearm charge related to methamphetamine, he would be acquitted of that charge as well. [Id., at ¶ 14.] Under that scenario, Burson would be sentenced to 18 months of imprisonment or probation as to the conviction related to cocaine. [Id., at ¶ 15.]

Burson claims he rejected the plea offer based on McIntyre's confidence in the motions to suppress and the chances at trial. Even after the motions to suppress were lost, McIntyre remained confident of winning acquittals at trial according to Burson. [Id., at ¶¶ 17-21.] Burson states in his affidavit that had McIntyre explained the weakness of the motions and the ramifications of losing at trial, he would have accepted the plea offer. [Id., at ¶¶ 16, 21.]

The affidavit of Burson's father is similar. Burson's father was present at some or all of the meetings between McIntyre and Burson. Burson's father understood from McIntyre that a plea of guilty to the government's offer would result in a 10-year sentence while a conviction after trial, would result in a 15-year sentence. [Doc. 1, Ex. H, Daryl Burson Aff., at ¶ 7.] Burson's father claims McIntyre predicted good results with the motions to suppress and/or trial proceeding. Burson's father would have encouraged his son to accept the plea offer had he known the weakness of the motions and the fact that his son would still face a mandatory minimum sentence of 10 years even if successful at trial in challenging the weight of the methamphetamine. [Daryl Burson Aff., at ¶¶ 9, 10, 17, 18.] Burson's mother's affidavit is essentially the same as that of her husband. [Doc. 1, Ex. I, Eva Jean Burson Aff.]

The government attached Attorney McIntyre's affidavit in support of its opposition to the habeas petition. McIntyre first explained that Burson's case initially was prosecuted by the state, where Burson was represented by a different counsel. According to McIntyre, Burson was offered a plea, where his exposure to incarceration would have been, at most 4.5 years. Burson purportedly rejected that plea offer because the state did not agree to a conditional discharge. At some point, the state then gave the case to the federal government. [Doc. 8, Ex. 1, Cliff McIntyre Aff., at ¶ 1; *see also* Doc. 8, Exhs. 2 and 3.]

McIntyre stated in his affidavit that Burson's father was at every attorney-client meeting and that he appeared to "control the decision making on behalf of his son." McIntyre claimed to have told the family about Burson's exposure in the federal system before the superseding indictment. McIntyre believed the family was in shock as to the difference in exposure between the state and federal systems. "It was dad's, not my position, that if the case was fought the government might back off and offer a better plea." [Id. at ¶ 3.]

12

McIntyre denied ever advising a client that the government tries to scare a defendant into pleading to the indictment by threatening a superseding indictment. McIntyre's 17-year experience as a criminal defense attorney was contrary to any such advice. McIntyre understood that if a superseding indictment was filed, the ten-year plea offer was off the table. He stated that he advised Burson "on the pros and cons of accepting a plea to ten years and the likely consequence of what would happen if he did not do so. The fact of the matter was that the Bursons did not want their son to do ten years in prison and would not allow him to take the plea." [Id., ¶¶ 5,6.]

McIntyre further denied having advised the Bursons that their son should not accept a plea to ten years because of strong pre-trial motions. The family and McIntyre agreed that the motion to suppress the post arrest statements had some merit, but "if won would not carry the day." According to McIntyre, the family also agreed that the motion to suppress evidence found in the car was weak but the family wanted the motion filed because of the family's belief that the drugs found in the dashboard were not in plain view. Because of the family's experience in owning a wrecking yard and towing service, they recommended bringing the vehicle to court so the judge could see the dashboard to determine if the drugs behind the dashboard would have been in plain view. Counsel arranged for this to happen. However, McIntyre states he advised the family they would probably lose the motions to suppress. [Id. at ¶ 7.]

McIntyre stated he never would have advised Burson that he would be acquitted of the methamphetamine and gun charges, if the government failed to prove the quantity of methamphetamine alleged in the superseding indictment. McIntyre found that accusation to be "ludicrous." [Id., ¶ 7.]

After the superseding indictment was filed and the motions to suppress were denied, the only option was to attempt to resecure the possibility of a ten-year sentence. In that vein, McIntyre hired

an expert chemist to challenge the issue of quantity of methamphetamine. If the expert could convince the Court that the actual quantity was less than that opined by the government's expert, then the mandatory minimum sentence for the drug charge could have been five years (plus five years for the gun charge). [Id., at ¶ 7.]

McIntyre admitted that Burson's father came to him a day before the bench trial and asked if they could hire another attorney for trial. McIntyre told them they better do so quickly so McIntyre could file a motion to continue the trial. McIntyre denied ever having called Judge Herrera, as claimed by Burson, or having asked the district court judge about Burson's desire to hire a new attorney. [Id., at ¶ 8.]

Finally, McIntyre noted that in between trial and sentencing, Burson was out of custody and arrested for violating conditions of release. [Id., at ¶ 9.]

**C.      Analysis**

Burson argues that an evidentiary hearing is required because of the facts placed in dispute by the affidavits submitted by both parties. In addition, Burson argues that McIntyre's affidavit "leaves no doubt that Mr. McIntyre failed to advise Mr. Burson to accept a plea offer that was clearly in his best interest – a plea offer that there was no rational basis to reject." [Doc. 11, p. 1.] In other words, Burson contends that in order to provide effective assistance of counsel in the context of plea negotiations, an attorney must "offer his informed opinion as to what plea should be entered." [Doc. 11] (*citing* Von Moltke v. Gillies, 332 U.S. 708, 721 (1948)).

In Carter, 130 F.3d at 1442, the Tenth Circuit observed that with respect to the first prong of the Strickland test, "effective assistance of counsel includes counsel's informed opinion as to what pleas should be entered." In Carter, trial counsel advised the defendant of the risk he faced if he proceeded to trial, and "urged [the defendant] to accept the plea offer." In Carter, the record

demonstrated that the defendant "armed with full knowledge of the ramifications of his decisions, decided to reject [the plea offer]." Id. Based on these facts, the Court affirmed denial of the ineffective assistance of counsel claim.

In so finding, the Tenth Circuit cited Boria v. Keane, 99 F.3d 492 (2d Cir. 1996). In Boria, the defendant also claimed he was deprived of constitutionally adequate representation of counsel when the State offered him a plea bargain which would have resulted in a one to three year sentence, and his attorney "allowed him to reject" the offer "without giving him any advice as to the wisdom of so doing." Id. at 494.

The factual scenario in Boria is somewhat similar to the present case. Boria was given an opportunity to accept a plea offer of a sentence of 1-3 years with knowledge that failure to accept it would result in a superseding indictment that would significantly increase his exposure. Id. at 494-95. He rejected the offer and was sentenced to 20 years to life. Here, Burson was presented with a plea offer that would have limited his exposure to a period of incarceration of 10 years, while he also knew that conviction at trial, after a superseding indictment was filed, meant a mandatory minimum sentence of 15 years. He rejected the offer, lost at trial, and was sentenced to a 15-year period of incarceration.

In Boria, the Second Circuit discussed a now deleted Model Code of Professional Responsibility that stated "A defense lawyer in a criminal case has the duty to advise his client fully on whether a particular plea to a charge appears to be desirable." The Court also referred to a Trial Manual for the Defense of Criminal Cases providing:

> The decision whether to plead guilty or contest a criminal charge is ordinarily the most important single decision in any criminal case. This decision must ultimately be left to the client's wishes. Counsel cannot plead a client guilty, or not guilty, against the client's will.

15

> But counsel may and *must* give the client the benefit of counsel's professional advice ono this crucial decision.

Id. at 496-97 (*citing* Anthony G. Amsterdam, Trial Manual 5 for the Defense of Criminal Cases (1988)) (emphasis in original).

In addition, the Court relied on language from a United States Supreme Court decision, in which the Court stated: "prior to trial an accused is entitled to rely upon his counsel to make an independent examination of the facts, circumstances, pleadings and laws involved and then to offer his informed opinion as to what plea should be entered." Von Moltke, 332 U.S. at 721.

In Boria. the Court concluded that counsel was ineffective because it was clear that counsel had not discussed with the defendant the advisability of accepting or rejecting the offered plea, notwithstanding counsel's own view that the client's decision to reject the plea offer was suicidal. Id. at 495. The Court concluded that the attorney's failure to give his client any advice or suggestion as to how to deal with the offer was ineffective. Id. at 498.

Here, the government, while not commenting on the Tenth Circuit's discussion in Carter, argued that Boria was limited to its facts and does not establish a duty of advising the client whether or not to accept a plea offer. [Doc. 8, p. 7.] In support of its position, the government relies on a later decision by the Second Circuit in Purdy v. United States, 208 F.3d 41 (2d Cir. 2000).

In Purdy, the defendant claimed he was denied effective assistance of counsel when his trial attorney failed to communicate to him certain representations of the federal prosecutor and failed to specifically advise him to accept a plea offer. Id. at 42. The defense counsel in Purdy informed his client in writing about the exposure to imprisonment after a trial and also upon a plea of guilty, although the exposure was not significantly different. Id. at 43. In addition, trial counsel and his associates met with Purdy and grilled him in a mock cross examination designed to highlight the

16

strengths of the government's case. Afterwards, the trial attorney stressed the difficulty of the case and Purdy's option to plead guilty. Purdy insisted he was innocent. The trial attorney again outlined in writing to Purdy his exposure after a conviction in contrast to a guilty plea. Counsel also impressed upon Purdy the troublesome aspects of the case, taking care to advise him and not to pressure him to admit guilt. Counsel wrote to Purdy a third time urging him to "give very careful consideration" to the case and pointing out the strength of the case against him.

After proceeding to trial, Purdy was convicted. The district court denied Purdy's habeas petition because he was unable to demonstrate prejudice. Id. at 44. The Second Circuit denied the request for a certificate of appealability.

In so finding, the Second Circuit discussed the need for defense counsel to give the client the benefit of counsel's professional advice on the crucial decision of whether to plead guilty, but also observed that the ultimate decision to plead guilty must be made by the defendant. A lawyer may not coerce a client into accepting or rejecting a plea offer. Id. at 45. "Counsel's conclusion as to how best to advise a client in order to avoid, on the one hand, failing to give advice and, on the other, coercing a plea enjoys a wide range of reasonableness because '[r]epresentation is an art.'" Id. (internal citation omitted). In Purdy, the Court rejected the argument that "regardless of the particular circumstances, [counsel] must advise the defendant to either plead guilty or not." Id. at 46.

The Court determines here, that it is unclear, if the particular circumstances of this case and Tenth Circuit precedent required Burson's trial attorney to advise him whether acceptance of the plea offer was in his best interests. In addition, the Court finds that there are a number of disputes in the affidavit testimony provided by Burson, his parents who attended attorney-client meetings, and McIntyre. These disputes concern critical information that McIntyre may have conveyed to

17

Burson and that may have influenced Burson's decision to accept or reject the plea offer. In other words, the precise advice given to Burson on pleading guilty is material. *See* Parsley, 604 F.3d at 672 (remanding for evidentiary hearing regarding advice counsel gave to client prior to trial or on pleading guilty). In sum, the Court decides that these questions and disputes should be resolved through an evidentiary hearing.

**D.     Evidentiary Hearing**

A district court "must hold an evidentiary hearing on the prisoner's claims unless the motion and files and records of the case conclusively show that the prisoner is entitled to no relief." United States v. Lopez, 100 F.3d 113, 119 (10th Cir. 1996) (quotation marks omitted); 28 U.S.C. § 2255(b). After a thorough review of the records and submissions by the parties and the pertinent law, the Court cannot conclude that Burson is entitled to no relief. Therefore, an evidentiary hearing is appropriate.

Moreover, the Court observes that it is common for courts to conduct hearings on very similar questions regarding whether counsel properly advised a client in the plea offer process. For example, in Purdy, the habeas court had conducted an evidentiary hearing, during which the parties supplied evidence as to what occurred during the plea negotiation process. Purdy, 208 F.3d at 44. In Boria, hearings were held on several days concerning the petitioner's motion to vacate the judgment of conviction on grounds of ineffective assistance of counsel. Boria, 99 F.3d at 495. The defendant's attorney testified at "great length during the hearing. Id. In Carter, the Tenth Circuit elected to address the ineffective assistance of counsel claim on direct appeal, rather than through a collateral proceeding, because the factual record had been well developed in a post-trial motion and testimony about the claim had been heard at a sentencing hearing. Carter, 130 F.3d at 1442. In Williams, the Tenth Circuit noted that the state appellate court had remanded the case back to the

18

trial court for an evidentiary hearing on the ineffective assistance of counsel claim during the plea process. Williams, 571 F.3d at 1088. *See also* Martinez, 359 F. App'x at 950 (district court granted request for evidentiary hearing on ineffective assistance claim regarding plea context).

At the evidentiary hearing, the Court directs counsel to be prepared to address the following matters: (1) all professional advice, written or otherwise, that counsel provided to Burson regarding the plea offer; (2) all information McIntyre gave Burson regarding the differences of sentence exposure between standing trial and accepting a plea offer; (3) whether McIntyre gave any advice or opinion to Burson regarding whether the plea offer was in his best interest; (4) the specific "pros and cons" described by McIntyre to Burson regarding a decision to accept the plea offer or proceed to trial; (5) the strengths and weaknesses of the case against Burson as described by McIntyre to Burson; (6) specific information or predictions McIntyre gave to Burson regarding the outcome of the motions to suppress and proceeding to trial; (7) what information McIntyre was required to give Burson regarding the plea offer, under Tenth Circuit precedent and the circumstances of this case; (8) all evidence demonstrating McIntyre's communications to Burson regarding the plea offer were effective or ineffective; (9) all reasons Burson decided to proceed to trial; (10) whether Burson established prejudice, through his assertions that he would have accepted the plea offer if not for McIntyre's alleged inaccurate advice or predictions, and in consideration of the disparities in sentences *vis-a-vis* the plea offer vs. trial conviction; (11) what type of evidence is sufficient under Tenth Circuit precedent to adequately support Burson's assertions that he would have accepted the government's plea offer had he received effective assistance of counsel; (12) all evidence showing that McIntyre provided deficient or inaccurate information to Burson that was the "decisive factor" in Burson's decision to reject the plea offer; (13) whether Burson's decision not to accept the state prosecutor's plea offer before the case was filed in federal court has any relevance to the issues

before the Court; and (14) what the appropriate remedy is, *e.g.,* reinstatement of the original plea offer, if ineffective assistance of counsel is found.

### Conclusion

The Court hereby sets a pretrial conference for **MONDAY, DECEMBER 6, 2010, AT 2:00 P.M.**, in Judge Scott's chambers, Suite 620, Pete V. Domenici Federal Courthouse, 333 Lomas Blvd., NW, Albuquerque, New Mexico, for the limited purpose of selecting a date for the evidentiary hearing ordered hereunder. Only counsel of record shall attend the conference. If counsel wishes to attend telephonically, please notify my chambers at least 48 hours prior to the conference with counsel's telephone number. At this conference, counsel shall have their professional and personal calendars available such that an evidentiary hearing date can be selected.

*/s/ Robert Hayes Scott*
ROBERT HAYES SCOTT
UNITED STATES MAGISTRATE JUDGE